Plaintiff did file a notice of appeal to the Full Commission. In response, defendant moved to deny plaintiff's appeal based upon failure to file a Form 44 or subsequent brief. Plaintiff has indeed not timely filed either a Form 44 or brief and thus is deemed to have abandoned any appeal on the merits of Deputy Commissioner Hoag's decision. However, plaintiff's request for N.C. Gen. Stat. § 97-88 attorney's fees shall remain valid for consideration as a separate motion standing alone.
* * * * * * * * * *
The undersigned have reviewed the Award based upon the record of the proceedings before the Deputy Commissioner.
The defendant has shown good grounds to reconsider the evidence. However, upon reconsideration of the evidence, the undersigned reach the same facts and conclusions as those reached by the Deputy Commissioner with minor technical modifications. Neither party here requested the Full Commission to receive further evidence or to rehear the parties or their representatives. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate award.
Accordingly, the Full Commission find as fact and conclude as matters of law the following, which were entered into by the parties as:
STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between plaintiff and defendant-employer at all relevant times.
3. The defendant-employer is self-insured with Hewitt, Coleman and Associates the adjusting agent.
4. The date of plaintiff's alleged injury was July 15, 1993.
5. A Form 22 was to have been submitted to establish plaintiff's average weekly wage. However, no form is present in the file.
6. Plaintiff's last date of work for defendant-employer was July 14, 1993.
7. The parties stipulated to the admission of the following documents into evidence:
a. Industrial Commission Form 19
 b. Plaintiff's answers to defendant-employer's interrogatories and request for production of documents.
c. Medical records
1. Reports from Gaston Orthopaedic Clinic
2. Report from Dr. Dupuy
3. Ambulance call report
 4. Gaston County Memorial Hospital notes from July 15, 1993 to July 24, 1993.
8. The issues to be resolved are as follows:
 a. Did plaintiff's injury occur in the course and scope of her employment with defendant-employer?
b. If so, to what benefits is plaintiff entitled?
The undersigned take judicial notice of the Industrial Commission Form 19 dated August 10, 1993 in which plaintiff's average weekly wage is listed as being $294.00. In the absence of a Form 22 which should have been submitted by defendants, the figure of $294.00 is utilized for the plaintiff's average weekly wage.
* * * * * * * * * * *
The Full Commission adopt as their own all findings of fact found by the Deputy Commissioner, with minor technical modifications, as follows:
Based upon the competent and convincing evidence adduced at the hearing, the undersigned make the following additional:
FINDINGS OF FACT
1. Plaintiff is sixty-seven years old, married and has a son and daughter. Plaintiff has had diabetes for some years.
2. Plaintiff worked forty to forty-eight hours per week as a "winder tender" with R.L. Stowe Mills. Her job required her to thread bobbins and to load those bobbins on cones to be shipped out. The job did not require any lifting or bending, and she was provided with two ten minute breaks each shift. Plaintiff was on her feet for the entire shift. She worked from approximately 2 p.m. to 10 p.m., or the second shift at the mill.
3. On June 15, 1993 plaintiff, as she was accustomed to doing every day, drove to defendant-employer's mill and parked on Stowe Street directly in front of the main entrance to the mill. The parking spaces there are designed for parallel parking. Plaintiff was parked on the left hand side of Stowe Street, with the entrance to the plant on her left so that when she opened the driver's door to exit, she was on the side of the street on which the mill was located. It was plaintiff's custom every day to cross the road to visit a friend prior to work. After visiting, plaintiff's custom was to leave the house of her friend at about twenty minutes till two.
4. As was her custom, plaintiff departed her friend's house, crossed the road and began going up the steps in order to enter the plant and go to work. As she was going up the steps, a lady asked plaintiff to move her car to facilitate the departure of the lady who was having some difficulty easing her car out of the parallel parking space. Plaintiff obliged and moved her car approximately six to eight feet.
5. Plaintiff then reparked her car, stopped it, and opened the door and exited again on the side adjacent with the mill. As she stepped out of the car, plaintiff tripped, fell and hurt her knee and shoulder. Plaintiff tripped over what she believed to be a pipe protruding a few inches above the ground on a grassy strip of property next to the street. The pipe was part of a drainage pipe connected to the side of defendant-employer's mill and ran down from the roof, on the side of the building, then continued partially under grass, underneath a chain link fence and out to the curb, where just before the curb it surfaced. The grass in the area was mowed both in front of and behind the chain link fence by R.L. Stowe Mill. Occasionally the pipe was visible, but on July 15, 1993, the grass had grown over it and it could not be immediately seen.
6. Plaintiff's memory is a little hazy about exactly where she fell and how many steps she took before tripping over the pipe or whether she actually saw the pipe at the time she fell. She is certain, however, that she tripped over the pipe as she had seen it in that location on previous occasions. Plaintiff was not able to stand after her fall. She pulled herself partially under the car in front of hers so as to be in the shade. Shortly after the accident, two individuals from the mill stopped in the middle of the road to assist plaintiff. The two individuals had not seen the accident.
7. Plaintiff was taken to Gastonia Hospital where she was examined and treated by Dr. Florack. Plaintiff's shoulder healed without medical treatment.
8. Defendant-employer, Stowe Mills, maintained the grass strip between the fence and the curb as well as the property from the building to the fence. Stowe Mills routinely mowed the grass. In addition, defendant-employer made repairs to the pipe and at some point subsequent to plaintiff's accident dug up the drain pipe to the point where the pipe emerged from the ground and emptied into the street, so that it would be visible.
9. Defendant-employer maintains that it did not own the grass strip outside the chain link fence and bordering on Stowe Street. However, defendant-employer never obtained a legal title search of the property. The basis of defendant-employer's belief had its origin in an inaccurate report made by a former employee of Stowe Mills to Barry Queen, Personnel Manager, containing a representation that the City Manager, Mr. Mitchell Moore, believed the property in question was city property. No one from Stowe Mills had ever spoken to Mr. Moore, however.
10. Plaintiff's attorney retained an attorney in Gastonia and a paralegal to search the legal title to the grass strip where plaintiff fell. The title search revealed that not only was the grass strip owned by defendant-employer, but that defendant-employer actually owns the street next to the grass strip. There is no dedication on real estate records of either Stowe Street in front of the plant or the grassy strip in front of the fence being dedicated by Stowe Mills to the city of Belmont.
11. According to Attorney Reid C. James:
 "It would be my opinion that R.L. Stowe Mills, Inc. owns all the property from the north side of Stowe Street back to the mill itself. I find no indication that Stowe Street itself was ever dedicated even though the city maintains the street. Therefore, the specific property in question, where your client allegedly fell, would be owned by Stowe Mills."
 Opinion letter dated May 18, 1994 and submitted and accepted as Plaintiff's Exhibit #3.
The strip of land outside of the fence and running parallel to Stowe Street, where plaintiff exited her car and tripped over a pipe is, by inference, the property of defendant Stowe Mills.
12. On July 15, 1993, plaintiff suffered an injury by accident arising out of and in the course of her employment with defendant-employer, R.L. Stowe Mills, when she exited her car from the place where she normally parked onto property owned by defendant-employer and tripped on a drain pipe which was owned and maintained by the mill.
13. As a result of plaintiff's fall on defendant's property, plaintiff suffered a fracture of the patella with wide displacement of two major fragments. Her right knee was swollen. In addition, she had an abrasion over the prepatellar skin. Dr. Florack, plaintiff's physician, elected to allow the skin to heal because of plaintiff's diabetes and scheduled plaintiff for surgery on July 21, 1993.
14. On July 21, 1993, Dr. Florack excised the distal poles of plaintiff's right patella and repaired the patella tendon. Plaintiff had a comminuted fracture of the distal pole which was essentially non-articular. The fragments were removed and the patella tendon was repaired primarily to the raw bony surface. Plaintiff remained in her knee immobilizer for three weeks.
15. Plaintiff was discharged from the hospital on July 24, 1993. A culture of her knee wound was taken which grew one positive of Staph Epi which was resistant to Napicillin and Penicillin but sensitive to Keflex.
16. On August 2, 1993, sutures were removed from plaintiff's knee and although there was a little superficial necrosis at the scab, there was no significant drainage and no arrhythmia. Plaintiff did not take antibiotics.
17. By August 18, 1993, plaintiff was able to take her splint off three or four times a day to work on range of motion exercises. She was also able to take off the splint to shower.
18. By September 8, 1993, plaintiff's wound was recovering well. She was able to bear weight without a brace. She was referred to physical therapy, two to three times weekly, in order to strengthen her right leg.
19. By October 11, 1993, plaintiff presented again to Dr. Florack, who determined that her physical therapy should continue three times a week for another month. Plaintiff was to remain out of work.
20. On November 11, 1993, plaintiff presented to Dr. Florack with significant pain in her right knee. She also reported limited motion in her back with stiffness and discomfort. Plaintiff was assigned low back exercises and diagnosed with S1 joint discomfort secondary to abnormal gait. Plaintiff was not released to return to work.
21. Plaintiff was next examined on December 9, 1993, at which time she was asked to have an MRI. She was still in significant pain. Dr. Florack did not release her to work.
22. On December 15, 1993, after a telephone conversation with plaintiff, Dr. Florack did not release plaintiff for work but suggested she stop using a walker and switch over to a cane.
23. On March 1, 1994, plaintiff once again presented to Dr. Florack for an examination. Plaintiff still reported pain in her right knee. Plaintiff lacked approximately ten degrees of full extension but had no exterior lag. She was walking well, although with a mild limp. Dr. Florack did not release plaintiff to regular work, due to continuation of an altered gait from plaintiff's knee, precluding her from returning to her regular job. Plaintiff received a note from Dr. Florack indicating that she could return to work at light duty, performing in a sitting position.
24. Dr. Florack saw plaintiff one final time on April 25, 1994. At that point plaintiff had reached maximum medical improvement. She was at that point discharged and given a 20% permanent partial impairment to the right knee.
25. Plaintiff requested to return to light work at defendant-employer's mill. Defendant-employer did not have any light work. R.L. Stowe Mills has not offered or provided plaintiff a job within her medical limitations. Plaintiff has not returned to defendant-employer's to work in any capacity nor has defendant-employer offered her a job. Defendant has not presented any evidence which would suggest that plaintiff might have been able to gain employment elsewhere. Plaintiff has not earned wages of any kind since her injury by accident. Approximately four to five months prior to this hearing, plaintiff suffered a non-job related stroke which has partially incapacitated her since that time.
26. Defendant's doctor, David Dupuy, disagreed with Dr. Florack's restrictions on plaintiff's activities and with plaintiff's impairment rating. The undersigned give greater weight to Dr. Florack, plaintiff's treating physician, since he was in a position to view plaintiff directly after the accident and throughout the healing process, as well as performing the operation on plaintiff's knee. He was also familiar with her diabetic condition.
27. Defendant had adequate and substantial grounds for defending this claim since they were under the mistaken impression that defendant-employer did not own the land on which plaintiff stepped as she exited her car on July 15, 1993 and tripped over the drain pipe which is situated in the area from the plant, under the chain link fence and out to Stowe Street.
28. Plaintiff sustained an injury by accident to her right knee and shoulder, arising out